## 10764.  SUMMERLIN v. THE STATE.

1. (a) Primarily testimony as to an offer by one accused of crime to submit to arrest is not admissible in his behalf, it being in the nature of a self-serving declaration; and while such testimony has been held admissible in rebuttal where evidence as to the flight of the accused has been introduced on the part of the prosecution as tending to show conscious guilt, evidence that after the indictment against him was found, about two months after the date of the alleged crime, the accused went to the sheriff and surrendered himself would not rebut evidence tending to show flight just after the alleged crime and during the period preceding the return of the indictment. (b) A ground of a motion for a new trial excepting to the exclusion of testimony but not showing why it was excluded and not stating why its exclusion was error is not in proper form for consideration.

2. As to the contention that the unintentional killing of a pregnant woman by the use of instruments with the intent to produce a miscarriage or abortion, under the state of facts alleged in the second count of the indictment, is not involuntary manslaughter in the commission of an unlawful act, but constitutes the crime defined in section 81 of the Penal Code (1910) as assault with intent to murder, the case is controlled by the ruling of the Supreme Court on this count (see Summerlin v. State, ante, 565; 150 Ga. 173, 103 S. E. 461).

3, 4, 7. The instructions by the court on the law as to principals in the second degree and as to what constitutes constructive presence are not subject to the exceptions taken; nor did the court err in using the language of the statute (Penal Code, § 82) as to the different means of producing an abortion besides that alleged to have been used in this case; and there is no merit in the exceptions to the refusal or failure to give certain instructions. The material issues in the case were covered by the charge of the court.

5. Exceptions abandoned in the brief of counsel for the plaintiff in error will not be considered.

6. The charge of the court as to the presumption of innocence is not subject to the exceptions taken.

8. There was sufficient evidence to authorize the conviction of the accused.

DECIDED JULY 29, 1920.

Conviction of involuntary manslaughter; from Clarke superior court — Judge Cobb.  June 21, 1919.

Application for certiorari was denied by the Supreme Court.

Under an indictment in three counts, charging respectively (1) murder, (2) involuntary manslaughter in the commission of an unlawful act, and (3) assault with intent to murder, alleged to have been committed upon a pregnant woman by the use of instruments with the intent to produce a miscarriage and abor-

tion, Summerlin was found guilty upon the second count, and found not guilty upon each of the other counts. The second count is set out in the opinion in *Summerlin* v. *State,* ante, 566, in which the court passed upon Summerlin's exceptions to the overruling of a motion to arrest the judgment. The overruling of his motion for a new trial is complained of in a separate bill of exceptions. The order refusing a new trial was "based upon two reasons: 1st. The motion and amendment are nullities, as they seek to set aside only a portion of a single verdict, and this can not be done by motion for new trial; such a motion sets aside the entire verdict; a verdict is not separable in a case like the present. 2d. Each and every ground of the motion and amendment is without merit."

1. The first ground dealt with in the following opinion is set out in full in the dissenting opinion (p. 573).

2. Upon the ground that the facts alleged in the second count do not constitute the crime of involuntary manslaughter in the commission of an unlawful act, but constitute the crime defined in section 81 of the Penal Code as assault with intent to murder, it is alleged (ground 13) that the court erred in charging the jury on involuntary manslaughter. The admission of testimony as to dying declarations was objected to on the ground that the gravamen of the offenses charged in the second and third counts is abortion, and in such a case the declarations of the woman are not competent evidence (grounds 5, 6, 7). The court instructed the jury that this evidence could be considered only with reference to the second count.

3. In ground 8 exception is taken to the refusal to give requested instructions to the jury to the effect that the mere performance of an operation by another person than the accused, to produce an abortion, in a room which was a part of the office of the accused, was not sufficient to authorize his conviction as principal in the first or the second degree; and that, it not being alleged that he was an accessory before the fact, and there being no evidence that he was present aiding and abetting the act, or kept watch or guard at a convenient distance, he could not be convicted as an accessory before the fact. In ground 11 exception is taken to the refusal to give requested instructions, relating to the second count, to the effect that to convict, the allegation that

the death was caused by the use of the instruments must be proved, and the child must have been quick. In ground 12 it is alleged that the court erred in refusing to charge that " a room wherein an abortion may be or has been committed is not evidence of the guilt of the owner of the room of the abortion committed therein, if there be no other evidence of the participation of the owner of said room in the perpetration of the alleged abortion."

4. In ground 15 it is complained that the court failed to charge that the accused could not be convicted under the second count without proof of the allegation as to the operation not having been advised by two physicians to be necessary to save the life of the woman. Ground 9 complains of the charge on the law of principals in the first and second degrees, as relating to the second count of the indictment. The charge referred to is in the language of the Penal Code (1910), § 42, down to the words "constructive presence," and adds a definition of that term as follows: "By a constructive presence is meant such a state of facts as to the place at which the alleged principal was, and his relation to the offense, as that a jury would be authorized to find that although actually not present at the very place that the alleged crime was committed, he was in legal contemplation present at the commission of the offense." It is alleged that the court erred in so charging, because there was no competent evidence to connect the defendant with the commission of the crime as principal in the second degree, and, further, because the court failed to explain the meaning of "legal contemplation," and failed to give the meaning of "constructive presence" as given in the code section quoted from (§ 42), as follows: "there may be also a constructive presence, as when one commits a robbery, or murder, or other crime, and another keeps watch or guard at some convenient distance." In ground 17 instructions in the language of section 82 of the Penal Code (1910), as to the unlawful use of instruments or other means to produce a miscarriage or abortion, are complained of on the ground that the court should not have charged as to other means than instruments, since no other means than instruments were alleged in the indictment.

6. The instructions as to the presumption of innocence, set out in division 6 of the opinion of the court, are complained of on the ground that the judge failed to instruct the jury that this

presumption is in the nature of evidence in behalf of the accused, and goes with him throughout his entire trial until overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt.

7. In ground 16 it is alleged that the court erred " in not charging the jury upon the law as relating to the direct cause of the death of the deceased under the second count;" because the evidence showed that a named doctor other than the accused performed several operations on the deceased, which could have caused her death instead of the operation alleged to have been performed by the accused; and it is contended that the court should have charged that if the jury had a reasonable doubt as to which of the operations caused the death, it was their duty to acquit the accused.

*William M. Howard, Green & Michael, Wolver M. Smith, John B. Gamble,* for plaintiff in error.

*W. O. Dean, solicitor-general, T. W. Rucker, Stephen C. Upson,* contra.

BLOODWORTH, J. 1. One of the grounds of the motion for a new trial alleges error as follows: " Because the court refused to allow the witness W. E. Jackson, sheriff of Clarke county, while on the stand as a witness for the State, to answer the following question propounded to him by movant's counsel, to wit: Q. 'When and how did he (Dr. M. T. Summerlin) come into your custody as sheriff and jailer of this county? Movant then and there insisted and stated to the court that if the witness was permitted to answer said question, he would testify that, after the presentment was found against the defendant M. T. Summerlin, he, M. T. Summerlin, presented himself to W. E. Jackson, as sheriff of said county, and voluntarily surrendered himself to W. E. Jackson as sheriff of said county, after said presentment was found against him." In *Dixon* v. *State,* 12 *Ga. App.* 17 (3) (76 S. E. 794), it is said that " while, primarily, testimony that one accused of crime voluntarily submitted himself to arrest is inadmissible, as being of the same nature as a self-serving declaration, still, where testimony has been introduced on the part of the prosecution, tending to show flight, as evidence of conscious guilt, it is competent for the accused to rebut it by evidence showing that, so far from attempting to escape, he notified the

sheriff of his desire to submit himself to custody," This exception to the general rule does not apply to the instant case. In this case the indictment, which was returned at the April term (fixed by law for the second Monday), alleges that the offense was committed on the 20th day of February. Evidence that *after the presentment was found,* which was about two months subsequent to the date of the alleged crime, the accused presented himself to the sheriff and voluntarily surrendered, would not rebut the evidence tending to show flight just after the commission of the alleged crime and during the period preceding the return of the indictment. In addition to the above, this ground of the motion is "too indefinite to raise any question for consideration by this court, as it does not show what were the objections sustained by the court, nor wherein the court erred in sustaining them and in excluding the evidence," but shows only the reason urged why its introduction was proper. See, in this connection, *Central of Ga. Ry. Co.* v. *Jaques,* 23 *Ga. App.* 396 (2) (98 S. E. 357); *Steed* v. *Cruse,* 70 *Ga.* 168 (4).

2. In the case of *Summerlin* v. *State,* 150 *Ga.* 173 (103 S. E. 461), the Supreme Court decided that the facts alleged in the second count of the indictment in this case constituted the offense of involuntary manslaughter in the commission of an unlawful act. See also ante, 565 (103 S. E. 830). Under that ruling the judge did not err in admitting the evidence of which complaint is made in grounds 5, 6, and 7 of the motion for a new trial. For the same reason the court did not err in charging as complained of in ground 13.

3. The court did not err in refusing to give to the jury the requested instructions set out in grounds 8, 11, and 12 of the motion for a new trial.

4. When all the facts and circumstances of the case are considered, and in the light of the charge as given, the judge did not err in not charging as set out in ground 15 of the motion for a new trial, nor in charging as complained of in grounds 9 and 17.

5. In the brief of counsel for the plaintiff in error ground 10 of the motion for a new trial is specifically abandoned.

6. The judge charged the jury that "the law presumes every person to be innocent of crime until his guilt has been established in the manner prescribed by law, and this presumption re-

mains with a man throughout his trial, until it is overcome by evidence which satisfies the mind and the conscience of the jury of the guilt of the accused of the crime charged in the indictment, or, if there are one or more counts in the indictment, of one or more of the counts of the crimes charged in the several counts." This excerpt from the charge is not erroneous when read in the light of the entire charge. See *Mauldin* v. *State*, 23 *Ga. App.* 537 (99 S. E. 50), and cit. Nor is this portion of the charge rendered erroneous because the judge in connection therewith failed to charge that "the presumption of innocence remains with a man, in the nature of evidence in his behalf, throughout his entire trial, until it is overcome by evidence which satisfies the mind and the conscience of the jury of the guilt of the accused of the crime charged in the indictment *beyond a reasonable doubt.*"

7. Ground 16 of the motion for a new trial is without merit. The charge as given covers all the material issues in the case, and if the plaintiff in error desired a more specific charge "upon the law as relating to the direct cause of the death of the deceased under the second count," he should have made a written request therefor as provided by § 1087 of the Penal Code and § 6084 of the Civil Code of 1910.

8. In addition to the other testimony on this line, a witness for the State, testifying as to the dying declaration of the person alleged to have been killed, testified: "She said Dr. Summerlin was the cause of it, — said they performed an operation on her, and I asked her who 'they' was, and she said Dr. Summerlin and Dr. Waters; the operation was performed in Dr. Summerlin's office; they made her swear she would not tell it." There is evidence to support the verdict.

*Judgment affirmed. Broyles, C. J., concurs.*

LUKE, J., dissenting. 1. I do not agree with the majority view of the court as announced in the first division of the decision. The ground there referred to, just as presented in the motion and argued to this court, is as follows: "Because the court refused to allow the witness W. E. Jackson, sheriff of Clarke county, while on the stand as a witness for the State, to answer the following question propounded to him by movant's counsel, to wit: Q. 'When and how did he (Dr. M. T. Summerlin) come into your custody

as sheriff and jailer of this county?' Movant then and there insisted and stated to the court that if the witness was permitted to answer said question, he would testify that, after the presentment was found against the defendant M. T. Summerlin, he, M. T. Summerlin, presented himself to W. E. Jackson, as sheriff of said county, and voluntarily surrendered himself to W. E. Jackson as sheriff of said county, after said presentment was found against him. The judge, being then and there informed as to what the answer of the witness would be if he had been allowed to testify in response to said question, and having refused to permit the witness to answer said question, committed error, in that the State had endeavored to prove by the witness Jackson that the defendant M. T. Summerlin had not been in Athens for some time, and that the defendant had been away for some time, for the purpose of showing flight, as evidence of his conscious guilt; and the State likewise introduced testimony from various other witnesses seeking to show flight, as evidence of his conscious guilt; the defendant was entitled to establish, as an explanation and in rebuttal to said testimony, that he voluntarily surrendered himself to the sheriff of said county when he learned that said presentment had been found and returned into court against him. The testimony introduced by the State upon the subject of flight is as follows: Upson Harper testified for the State as to the flight of the defendant, as follows: 'I have charge of the Southern Mutual Building.' Q. 'Since the first day of March I will ask you whether or not Dr. Summerlin has been there?' (Southern Mutual Building.) A. 'I don't know, sir. I couldn't tell you, to save my life, what date it was.' Q. 'You remember the day he was said to have fainted on the elevator?' A. 'I remember the day, but not the date.' Q. 'Have you seen him there since that time?' A. 'I don't think I have. I am not sure. I have talked to him over the telephone.' Chief of police Henry Beussee testified for the State as to flight of the defendant, as follows: Q. 'I mean from the first day of March on through April?' A. 'I don't remember seeing him.' Q. 'Didn't see him in town during that time?' A. 'I don't remember seeing him after the day he was lying on the floor sick.' Dr. A. C. Holliday testified for the State as to flight of the defendant, as follows: Q. 'What day of the month was it

when you had that conversation with him?' A. 'That was the first day of March this year.' Q. 'Has Dr. Summerlin been back to his office, of your knowledge, since that time?' A. 'No, sir.' Q. 'Has he been in Athens since that time, if you know it?' A. 'I don't know. I haven't seen him, — not of my knowledge.' Walter E. Jackson, sheriff of Clarke county, testified as a witness for the State, as to the flight of the defendant (after the aforesaid witness had testified), as follows: Q. 'You know whether he has been in Athens since the 20th day of February, — I mean the 1st day of March?' A. 'First day of March?' Q. 'Yes.' A. 'No, sir. I don't know what time he left, but he has been away some time.' Movant then and there excepted, and here and now excepts and assigns as error the ruling of the court in refusing to permit the defendant to prove by the witness W. E. Jackson that he (M. T. Summerlin) voluntarily returned to Athens, Georgia, and surrendered to the sheriff of Clarke county, Georgia, W. E. Jackson, so soon as he was aware of said presentment having been returned against him, as an explanation and in rebuttal of said evidence of his having fled from the crime as charged against him."

This court said in *Dixon* v. *State, 12 Ga. App.* 17 (3) (76 S. E. 794) : "While, primarily, testimony that one accused of crime voluntarily submitted himself to arrest is inadmissible, as being of the same nature as a self-serving declaration, still, where testimony has been introduced on the part of the prosecution, *tending* to show flight, as evidence of conscious guilt, it is competent for the accused to rebut it by evidence showing that, so far from attempting to escape, he notified the sheriff of his desire to submit himself to custody." Aside from this decision as a precedent, it is manifestly unfair, in my opinion, for the State to be permitted to introduce evidence of flight and reap its advantages without allowing the defendant to rebut it. Especially in this instance is it unfair, because the very witness that was testifying and giving evidence tending to show flight was, upon cross-examination, instructed by the court not to answer a question from the defendant's counsel the answer to which, the court was advised, would tend to rebut the evidence of conscious guilt by reason of a circumstantial proof of flight. The court disarmed the de-

fendant of a weapon which in all fairness he had a right to use for the purpose of explaining his conduct.

In my opinion the cases of *Central of Georgia Ry. Co.* v. *Jaques,* and *Stead* v. *Cruse,* cited in the decision, are not controlling authority as to the ground of the motion for a new trial here discussed. In my opinion it was not necessary in this particular instance for the movant to show in his motion for a new trial upon what ground the court refused to allow him to ask the witness, on cross-examination, the question, and elicit the answer which his motion shows he would have gotten. In addition to what I have said I think the defendant was entitled to ask this question upon cross-examination, under the broad right to make a thorough and sifting examination.

2, 3. I do not agree with the rulings announced in the third and fourth divisions of the decision. I think the requests to charge were pertinent, and, from a most careful examination of the charge of the court as a whole, I do not think the requests were in substance given. It was necessary, in my opinion, for the court to deal specifically and fully with the questions raised by the timely written requests.

8. In addition to what I have said, I do not think that the evidence in this case supported the verdict. The defendant was convicted of the offense of involuntary manslaughter in the commission of an unlawful act. The very best evidence and the only evidence which connected the defendant with the commission of the crime was the dying declarations of the deceased which were testified to by one of the doctors who was with her shortly before her death. Her death was occasioned by an abortion. Her dying declaration was that Dr. Summerlin, the defendant in this case, was the father of the child, and that Dr. Waters produced the abortion in Dr. Summerlin's office. The deceased, in her dying declaration, did not say that Dr. Summerlin, this defendant, advised the abortion or aided in it, or had anything to do with it. There was no other evidence which connected this defendant with the crime charged. This court said, in *Butler* v. *State,* 11 *Ga. App.* 815 (76 S. E. 368) : "Mere proof of presence by the accused, when the criminal act was committed by another, and of subsequent flight, does not, in the absence of evidence showing that the accused advised or abetted the commission of the crime,

authorize his conviction." The Supreme Court said, in *Futch* v. *State*, 137 *Ga.* 76 (3a) (72 S. E. 911): "Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of a crime by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing." In the case which we have here for review there is not one word of evidence which connects this defendant with the killing of the deceased. The nearest approach we have to it is that another person in the office of this defendant committed the crime, with not one word of evidence that the defendant knew that the crime was being committed, or counselled it or advised it. For this reason I do not think the verdict was authorized by the evidence.